Alfonso de Cumpiano, Juez Ponente
TEXTO COMPLETO DE LA SENTENCIA
El apelante, Sr. Darío E. Arroyo Morales, solicita la revocación de la sentencia dictada el 12 de septiembre de 1995 por el Tribunal de Primera Instancia, Sub-sección de Distrito, Sala de Yauco, declarando con lugar la demanda que instó Velco por incumplimiento de un contrato de arrendamiento financiero de un camión. La sentencia apelada atendió sólo el asunto relativo a la forma y alcance de la notificación de incumplimiento con el pago de los cánones, y a ello se circunscribió la controversia.
No le asiste la razón al apelante en su señalamiento de errores. Las cláusulas del contrato sostienen la determinación del tribunal apelado.
Mediante contrato de arrendamiento financiero (Lease Agreement) de 5 de abril de 1993 el señor *1442 Arroyo Morales convino con Velco el arrendamiento de un camión por un término de sesenta (60) meses. Conforme dicho contrato, el señor Arroyo Morales se obligó a pagar un canon mensual de $596 el primer año, $587 los próximos dos años y $576 los últimos dos años. El contrato dispuso sobre reclamaciones, garantía, notificaciones de incumplimiento, cláusula penal y terminación. Dicho contrato fue designado de tipo abierto (open end).
El señor Arroyo Morales utilizó el camión durante los meses de abril a junio de 1993. Debido a desperfectos mecánicos lo llevó a reparar en julio de 1993 a los talleres de la distribuidora referida por Velco, con cargo a la garantía. Se le devolvió reparado al apelante en agosto de 1993. El señor Arroyo Morales utilizó el camión hasta octubre de 1993 cuando Velco lo recogió a requerimiento del apelante porque continuaban los problemas mecánicos. Una vez reparado, y ante la falta de pago de los cánones de arrendamiento correspondiente a los meses en que el camión estuvo en reparación, y luego de enviarle al apelante notificación de incumplimiento y aviso de venta, Velco lo reposeyó y lo vendió en $12,500.00.
Posteriormente, Velco presentó demanda contra el señor Arroyo Morales por incumplimiento de contrato en la que solicitó el pago de $10,671.88 en concepto de tres meses de cánones de arrendamiento, los cánones hasta el vencimiento del contrato y otros cargos, menos la suma obtenida por la venta del camión.
A su vez, el señor Arroyo Morales presentó reconvención en la que solicitó el pago de los daños y perjuicios ocasionados por el incumplimiento de contrato por parte de Velco al no proveerle un reemplazo del equipo arrendado. Esta fue permitida por el tribunal.
Luego de trámites procesales, las partes estipularon, en vista en Cámara ante el juez, el hecho que Velco envió por correo una notificación de incumplimiento y que ésta no se recibió , quedando sometido el caso. No surge que hubiese controversia en los hechos.
En su sentencia, el tribunal apelado concluyó que el contrato entre Velco y el señor Arroyo Morales sólo exige el envío de la notificación de incumplimiento, no así el recibo de ésta. En su consecuencia, declaró con lugar la demanda en cobro de dinero por incumplimiento de contrato.
El señor Arroyo Morales argumenta en su recurso que erró el tribunal al concluir que Velco cumplió con su obligación contractual al enviar una carta que no llegó, cuando el espíritu del contrato exigía una adecuada notificación. Indica que la estipulación de hechos sobre la notificación derrotó la presunción establecida por la Regla 16 de las de Evidencia, a los efectos de que una carta debidamente depositada en el correo llegó a su destinatario. Sostiene que en ausencia de prueba por parte de Velco procedía concluir que éste no cumplió con su obligación de notificar por correo al admitir que la carta no llegó. Señala, finalmente, que el curso que siguieron los procedimientos en el caso no amerita resolver la controversia en la afirmativa.
Velco señala que la cláusula 16 del contrato establece que se entenderá recibida cualquier notificación una vez depositada en el sistema de correo, por lo que conforme dicha cláusula y la estipulación entre las partes sobre el envío de la carta de notificación, debe confirmarse la sentencia. Informa que en la vista en cámara el tribunal encontró que no existía controversia de hechos y que se encontraba en posición de dictar sentencia sobre el derecho aplicable.
Procede examinemos el contrato en cuestión, a la luz de los hechos y los principios contractuales aplicables.
II
Como principios generales aplicables a toda controversia, están los consagrados en el Código Civil a los efectos de que los pactos, cláusulas y condiciones acordados entre partes contratantes tienen fuerza de ley y deben cumplirse siempre que no sean contrarios a las leyes, la moral, ni el orden público. Artículos 1044 y 1207 del Código Civil, 31 L.P.R.A. sees. 2994 y 3372.
Además, está claramente preceptuado que si los términos de un contrato son claros y no dejan duda sobre la intención de los contratantes se les dará el sentido literal de sus cláusulas. Artículo 1233 del *1443 Código Civil, 31 L.P.R.A. see. 3471. De manera que si la redacción del contrato establece claramente la voluntad de las partes no es necesario utilizar las reglas de interpretación. En caso de duda las cláusulas de un contrato deben interpretarse las unas con las otras, atribuyendo a las dudosas el sentido que resulte del conjunto de todas. Santiago v. Kodak Caribbean. Ltd., 130 D.P.R._(1992); 92 J.T.S. 11, pág. 9165.
Tengamos también presente que toda duda que surja en los contratos de adhesión, como el que está en controversia, debe resolverse en contra de la parte que lo redactó. Artículo 1240 del Código Civil, 31 LPRA see. 3478. No obstante, dicha disposición opera solamente cuando el contrato de adhesión contiene cláusulas obscuras o ambiguas. En ausencia de obscuridad, el contrato debe ser interpretado según sus términos. Casanova v. P.R. American Ins. Co., 106 D.P.R. 689, (1978); Arthur Young v. Vega III, 137 D.P.R._(1994), 94 J.T.S. 75, pág. 11967, n. 9.
El contrato específico que nos ocupa hasta muy recientemente no estaba regulado por ley. La Ley Núm. 76 de agosto de 1994, 10 L.P.R.A. sees. 2401 y ss., Supl. (1995), se aprobó con el propósito de regular el arrendamiento de bienes muebles en Puerto Rico, proveer salvaguardas a los arrendatarios y garantías a los arrendadores. Aunque el contrato bajo consideración fue suscrito antes de su vigencia, las disposiciones de la Ley para Reglamentar los Contratos de Arrendamientos de Bienes Muebles nos sirven para examinar la adecuacidad de las cláusulas en controversia.
Antes de la aprobación de dicha ley, es útil guía la jurispmdencia de nuestro Tribunal Supremo, que ha atendido algunas controversias respecto a cláusulas típicas de los contratos de arrendamiento.
La licitud de las llamadas cláusulas penales como las incluidas en las cláusulas 8 y 15 del contrato entre las partes apelante y apelada, fue sostenida en el caso de R. C. Leasing Corp. v. Williams Int. Ltd., 103 D.P.R. 163, 170-171 (1974). Mediante éstas se concede al acreedor el uso antes de tiempo de los cánones por pagar y la potestad de reposesión del bien arrendado, ante el incumplimiento del arrendatario.
La naturaleza y antecedentes del contrato de arrendamiento de bienes muebles fue objeto de consideración en el caso de Meyers Bros. v. Gelco, 114 D.P.R. 116 (1983). En el aludido caso se analizó la cláusula de exoneración de responsabilidad de la entidad financiera, catalogándose ésta como elemento típico del contrato y sosteniéndose su validez. En el caso de autos, la cláusula 14 incluyó una disposición análoga.
Así, pues, ante el incumplimiento por parte del apelante de los cánones de arrendamiento por tres meses, Yelco puso en operación la cláusula 15 del contrato. Mediante ésta, se acordó entre las partes que si mediaba incumplimiento de los pagos, y dicho incumplimiento persistía por cinco días después de notificado el señor Arroyo Morales de su incumplimiento, Yelco podía dar por vencido el contrato y proceder a la venta del camión, con la notificación que requiera la ley. Esto es, podía aplicar la cláusula penal, cuyo texto en el idioma inglés en que está redactada, dispone en sus partes pertinentes:
"... in any such event, Lessee shall be deemed to be in default thereunder, and Lessor, at its option, may thereupon terminate this lease without further notice to Lessee.

"... Lessor... may sell each such Unit... and with such notice to Lessee as may be required by law.

"... In addition, Lessor shall be entitled to recover from Lessee all unpaid rentals for the remainder of the term, Lessor's cost of repossessing any Unit, and other sums payable by Lessee pursuant to any of the provisions of this Lease then owing and unpaid, less only the net proceeds received by Lessor from any reletting or sale of any such Unit."

La misma cláusula dispone como sigue respecto al incumplimiento por falta de pago y a su notificación:

"Default shall occur if Lessee fails to pay any part of the monthly Rental provided in paragraph 3 hereof or other sums payable by Lesee pursuant to this Lease, and such default shall continue for 5 days after written notice thereof from Lessor to Lessee."

*1444 La cláusula 16 del contrato también hace referencia a la notificación que se requiera, en cuanto a la forma y a su alcance, en los siguientes términos:

"Except as otherwise provided for herein, any notice to be furnished to either party shall be in writing and shall be deemed to have been given when deposited in the United States Mail, postage prepaid, and addressed to the respective party at its address first above written, or such other address designated by either party in writing."

Cláusulas análogas en cuanto al requisito de notificación en contratos de esta naturaleza no han sido objeto de decisión por nuestro Tribunal Supremo. Las citadas disposiciones claramente establecen el requisito de notificación del incumplimiento, que se entenderá efectuado una vez se deposite en el correo, dirigida a la parte correspondiente. No hay requisito alguno de su recibo. 
Teniendo presente que lo que se notifica es el incumplimiento de cánones dejados de pagar bajo cláusulas conocidas por el apelante, cuya consecuencia está taxativamente dispuesta en el contrato, es insostenible su argumento de violación al debido proceso de ley. Al no pagar los cánones de arrendamiento estaba sujeto el señor Arroyo Morales a que se pusieran en operación las cláusulas contractuales, incluyendo la de la notificación de su incumplimiento, independientemente de su recibo, y la cláusula penal.
A manera comparativa, por no contar al momento de la contratación con disposiciones análogas en nuestro ordenamiento, el Uniform Comercial Code dispone que, salvo pacto en contrario, un arrendatario financiero no tiene derecho a notificación en casos de incumplimiento. A esos efectos, dispone dicho Código:
"Except as otherwise provided in this Article or the lease agreement, the lessor or lessee in default under the lease contract is not entitled to notice of default or notice of enforcement from the other party to the lease agreement." Uniform Commercial Code, sec. 2A-502, Uniform Laws Annotated, West, 1989, pág. 726.
Se ha expresado que en aquellos casos en que se acuerda algún tipo de notificación, sin más, se satisface la obligación con el envío por parte del arrendador de la notificación, aun cuando el arrendatario no la reciba. 1 Ronald A. Anderson, Anderson on the Uniform Commercial Code, sec. 1-201:134, 1981, pág. 258.
En el comentario a la sec. 2A-502, supra, se indica que la notificación de incumplimiento no es parte de los requisitos del debido proceso, en los siguientes términos:
"Although Article 9 requires notice of disposition and strict foreclosure, the different scheme of lessors' and lessees' rights and remedies developed under the common law, and codified by this Article, generally does not require notice of enforcement; furthermore, such notice is not mandated by due process requirements." Pág. 727.
El hecho que se cumpliera en este caso con la notificación al enviarla, según el contrato, no es un requisito contrario a la ley, la moral o el orden público, sobre todo cuando medió el conocimiento del incumplimiento y sus consecuencias. Aun cuando se catalogue como contrato de adhesión, sus cláusulas no pueden definirse como ambiguas u oscuras.
De lo expuesto se colige que no erró el tribunal apelado al concluir que el contrato entre el Sr. Darío Arroyo Morales y Velco sólo requería el envío por correo de la notificación de incumplimiento. Su dictamen no se basó en el principio evidenciario que una carta dirigida por correo fue recibida, puesto que dicha presunción quedó derrotada por la estipulación de que se envió y no se recibió . Su interpretación basada en las disposiciones contractuales, es válidamente sostenible. El alcance de esa interpretación se considera a continuación.
III
Como último punto, conviene atender lo expresado por el apelante a los efectos de que el hecho estipulado no requería el dictamen a favor de Velco. El aludido señalamiento no está sustentado, ni se *1445 nos pone en condiciones de evaluar las condiciones bajo las que se llegó a la estipulación sobre la notificación. El apelante nos informó que no hubo presentación de prueba testifical, y que no se grabaron los procedimientos en cámara. 
Al igual que ante el tribunal apelado, la controversia ante nos se limitó a la determinación del tribunal sobre la notificación. Los documentos sometidos por el apelante incluyen cartas de • notificación de incumplimiento, gestiones de cobro con el apelante, la reposesión del vehículo en Centro Camiones donde se encontraba en reparación. Apéndice, págs. 26-31. Consta, además, la carta certificada de 14 de febrero de 1994 al apelante, informándole que el camión fue devuelto para liquidación, que la tasación es de $9,700 y que de tener mejor oferta, se comunique con Velco en cinco (5) días o se procederá a su venta. Apéndice, págs. 46-47.
El contrato claramente disponía la responsabilidad del apelante de solicitar cualquier remedio sobre garantía o vicios ocultos contra el vendedor o distribuidor, liberándose a Velco de responsabilidad. (Cláusulas 11 y 14). La relación entre las partes quedó también expuesta disponiendo la titularidad del camión en Velco, y la posesión y disfrute en el apelante siempre y cuando no incumpliera con las cláusulas estipuladas. (Cláusula 13). Fue explícito al disponer que no empece se devolviera el bien objeto del contrato, éste continuaría en efecto respecto a dicho bien al riesgo del arrendatario, hasta la expiración del contrato. También, que la devolución del bien constituiría autoridad al arrendador de venderlo, y que la devolución antes de la terminación del contrato, no relevaba al arrendatario de sus obligaciones. (Cláusula 8). Finalmente, como antes señalado, el contrato contempló que la falta de pago de cánones daría lugar a su terminación por el arrendador y a la reposesión y venta del bien, bajo la notificación requerida por ley. 
Bajo los hechos considerados por el tribunal que se nos han presentado, no surge que el arrendatario instara acción contra el vendedor por los desperfectos, surge que entregó el camión o lo dejó en reparación en Centro Camiones sin pagar los cánones al arrendador, que éste ejerció los derechos bajo el contrato de acelerar la deuda, reposesión y venta del camión, previa la notificación de incumplimiento que se determinó efectuada, y que el monto reclamado por la deuda fue conforme a lo pactado.
Aunque el tribunal no lo especificó así, como debió hacerlo en su sentencia, el resultado de su dictamen a la luz de los hechos y las cláusulas contractuales fue el denegar la reconvención, y determinar que procedían las actuaciones del arrendador. Las circunstancias bajo las que medió el incumplimiento, según surge de los documentos y planteamientos de las partes, conducen a la determinación de declarar con lugar la demanda.
IV
En atención a todo lo anterior, se confirma la sentencia apelada.
Lo acordó y manda el Tribunal y lo certifica la Secretaria General.
María de la C. González Cruz
Secretaria General
ESCOLIOS 96DTA34
1. Las partes pueden válidamente acordar la forma de notificación, y así se ha comentado que:

"In the absence of a conflict with law or public policy, parties may contract how notice shall be given. 6 Samuel Williston, A Treatise on the Law of Contracts, 3rd Ed., 1962, pág. 514."

2. Moción informativa del apelante de 17 de noviembre de 1995.
3. No existía entonces requisito legal al respecto. La Ley Núm. 7ó, supra, dispone en su Artículo 26 sobre el procedimiento para la venta de bienes en arrendamiento. 10 L.P.R.A. see. 2424, Supl. (1995). En éste se incluye *1446 la notificación al arrendatario mediante carta certificada de las ofertas de compra. Nuestra decisión en este caso no se analiza bajo el lenguaje vigente, puesto que es inaplicable pero de haber estado vigente, hubiese estado sujeta a los propósitos de la aludida disposición, que parecen apuntar hacia una efectiva notificación sobre las . ofertas de compra.
4. Nuestra labor revisora se hace muy difícil cuando las sentencias no revelan el análisis que llevan al tribunal apelado, conforme las determinaciones de hechos, a las conclusiones sobre las reclamaciones bajo su consideración.